## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **JANE BROWN, on behalf of herself and as Personal Representative and Executrix of the Estate of Jimmie Charles Brown** | |
| **Plaintiffs,** | **CIVIL ACTION NO:** |
| | **_____** |
| **vs.** | |
| **FAIRHOPE YACHT CLUB** | |
| **Defendant.** | |

## COMPLAINT

### Statement of the Parties

1.     Plaintiff, Jane Brown, is the widow of Jimmie Charles ("J.C.") Brown and the Personal Representative and Executrix of the Estate of Jimmie Charles Brown. She is an adult resident of Mobile, Mobile County, Alabama.

2.     Defendant Fairhope Yacht Club ("the Yacht Club") is an Alabama Domestic Non-Profit Corporation, with its principle place of business located at 101 Volanta Avenue, Fairhope, Alabama 36532, and mailing address of P. O. Box 1327, Fairhope, Alabama 36533-1327.

3.     This Court has subject matter jurisdiction over this case under the General Maritime Law of the United States, as the facts and circumstances giving rise to Plaintiffs' causes of action occurred in navigable waters and bear a substantial relationship to traditional maritime activity.

### Statement of the Facts

4.     On April 25, 2015, the Defendant sponsored and hosted a boat race that began in

Baldwin County, Alabama, and concluded in Mobile County, Alabama, at Dauphin Island.

5.       In the months leading up to the race, the Yacht Club's Race Committee, the group responsible for the planning and safe conduct of the race, chose not to develop any form of safety plan to respond to emergencies that might arise during the race, nor did the Committee create any weather plan to inform its decision-making in the event of severe weather.

6.       The Yacht Club also applied to the United States Coast Guard for a permit to conduct the 2015 Dauphin Island Race.  In its application, the Yacht Club represented to the USCG that no unusual hazards to participants would be introduced into the Regatta Area. While the Yacht Club listed no vessels it was providing for safety purposes on its USCG permit application, it represented that its deemed its patrol adequate for safety purposes, and requested no Coast Guard or Coast Guard Auxiliary Patrol.

7.       In issuing a permit to the Yacht Club, the USCG made it clear that the Yacht Club is responsible for the safe conduct of the event, including, but not limited to, instruction to and qualification of participants, safety equipment inspections, and rescue and first aid facilities. The Coast Guard also instructed the Yacht Club that it "must be constantly aware of weather forecasts and conditions so that unsafe conditions can be identified and responded to, including termination of the event if necessary to ensure safety of all participants."  The Coast Guard permit specifically stated that: "This permit is issued on the condition that the sponsor furnish a sufficient number of rescue vessels to provide adequate safety for all participants.  These vessels must be adequately identified as Event Committee Boats**.** They are direct representatives of the sponsor who is responsible for briefing and coordinating each vessel's operation ensuring positive control for the event."

8.       On the night before the boat race, the Yacht Club hosted a party from 5:00 pm to

11:00 pm for race participants at which alcohol was provided. The Yacht Club incentivized race participants with trophies and winner's lists that are prestigious in the yachting community. The Yacht Club also solicited sponsorships for the race that placed pressures on the Yacht Club to not cancel the race.

9.     The National Oceanic and Atmospheric Administration's (NOAA) weather forecast issued on April 24, 2015 at 6:11 pm indicated that severe thunderstorms were possibly headed towards the Mobile Bay area.

10.     On the morning of the race, April 25, 2015, NOAA's weather forecast at 3:48 am indicated severe thunderstorms possible near the Mobile Bay area. The National Weather Service in Mobile, AL also issued severe thunderstorm warnings for Mobile and Baldwin Counties the morning of the yacht race. The Yacht Club then hosted a breakfast event from 7:30 am to 8:30 am for race participants at which alcohol was provided and/or encouraged. The race was scheduled to begin at 9:30 am.

11.     At approximately 7:44 am on the day of the race, the Yacht Club caused a cancellation notice to be posted on its website for about 30 minutes stating that the race had been cancelled due to inclement weather. The cancellation notice was removed at the direction of the Yacht Club at about 8:10 am.

12.     Prior to the start of the race, all participants were informed that the Yacht Club would communicate with race participants on Channel 68 of the VHF radio band.

13.     Due to the Yacht Club's original decision to cancel the race, the start time was delayed. The Yacht Club also ordered a restart of the already delayed race that further delayed the official start. The race began at 11:00 am instead of the originally scheduled 9:30 am start time. In all, approximately 476 people were on board 117 boats when the yacht race began after

3

the restart.

14.    At about 1:35 pm, the Storm Prediction Center posted another severe thunderstorm watch for the area including Mobile Bay.

15.    At about 2:21 pm the National Weather Service in Mobile issued another severe thunderstorm warning for Mobile County as a line of storms began to approach from the western border of Alabama.

16.    At approximately 2:30 pm the United States Coast Guard ("USCG") called the Race Committee aboard the Race Committee Boat at the finish line via telephone and advised that potentially severe weather was incoming.  Sometime shortly thereafter, the USCG made a VHF radio transmission to the Race Committee Boat stating that it was "on station" nearby.

17.    At about 2:47 pm the National Weather Service issued a second severe thunderstorm warning, this one for the Baldwin County area.

18.    At about 3:10 pm the storm entered Mobile Bay from the west.

19.    As a result of the delays, most of the boats in the race were still in Mobile Bay at 3:10 pm.

20.    At about 3:15 pm Middle Bay Lighthouse recorded a wind gust of 73 MPH, which is one MPH under hurricane strength.

21.    In addition to the land warnings, marine warnings were also issued.

22.    As the deadly storm entered Mobile Bay, the Yacht Club's Principal Race Officer, Anne Fitzpatrick, and Race Committee Co-Chairman, John Hirsch, occupied a forty-eight (48) foot motor yacht positioned at the finish line near Dauphin Island. This vessel, owned and/or controlled by Mr. Hirsch and/or Ms. Fitzpatrick as representatives of the Yacht Club, was capable of safely rendering assistance to nearby boats in danger of sinking. However, despite

4

their awareness of the danger faced by nearby race participants, Ms. Fitzpatrick and Mr. Hirsch chose not to participate in any rescue efforts until the storm had passed.

23.     During the storm, the boat carrying J.C. Brown capsized in the Mobile County side of Mobile Bay, and he drowned.  A total of ten (10) boats sank during the yacht race, putting forty (40) people into the water, six (6) of whom, like J.C. Brown, lost their lives.

24.     J.C. Brown's body was never recovered.

### COUNT ONE – Wrongful Death/Negligence

25.     Plaintiffs Jane Brown realleges paragraphs one through twenty-four of the Complaint.

26.     At the aforementioned time and place, Defendant Fairhope Yacht Club sponsored a yacht race and had a duty to exercise due care for race participants. The Yacht Club negligently chose to reverse its decision to cancel the race due to the threat of inclement weather.

27.     The negligent decision by the Yacht Club to cancel and then resume the race resulted in a delay of one and a half (1 ½) hours in the start of the race, which caused the boat occupied by J.C. Brown to be positioned directly in the path of the storm, on the Mobile County side of Mobile Bay.

28.     By not cancelling or suspending the race when severe weather was possible, and then imminent, because of its own concerns to satisfy its obligations to sponsors and others, the Yacht Club continued to negligently induce and incentivize race participants to race in extremely dangerous severe weather.

29.     During the race, the Defendant also negligently failed to warn the race participants of the approaching severe weather system of which it was aware.

30.     The Yacht Club also negligently or willfully violated its USCG permit by not

providing for sufficient safety and rescue boats, by failing to be constantly aware of weather forecasts and conditions so that unsafe conditions could be identified, by not communicating with participants regarding unsafe conditions, and by not terminating the event to ensure the safety of all participants.

31.     These actions were a breach of the Yacht Club's duty to exercise reasonable or due care as identified in the applicable USCG permit and the US Sailing Association's Race Management Handbook.   As a proximate consequence of the negligence of Defendant Fairhope Yacht Club, J.C. Brown was killed.

**COUNT TWO – Failure to Provide Assistance at Sea**

32.     Plaintiff Jane Brown realleges paragraphs one through thirty-one of the Complaint.

33.     When the storm entered Mobile Bay, John Hirsch and Anne Randy Fitzpatrick, as the skippers or persons in charge of the Yacht Club Race Committee Boat anchored at the finish line, bore a duty under 46 U.S.C.A. § 2304 to render assistance to nearby vessels, including the one occupied by J.C. Brown.  Mr. Hirsch and Ms. Fitzpatrick were aware or should have been aware, in their capacity as Race Officials, of the general location of these vessels and the imminent danger faced by their occupants. Moreover, they understood that the Race Committee vessel, a 48-foot Hatteras motor yacht, and its ten (10) occupants, were capable of safely rendering assistance to the stranded race participants, including J.C. Brown. Nonetheless, they chose to do nothing and waited not only until the storm passed, but the scheduled end time of the race, nearly two hours after the storm passed, before joining rescue efforts already underway.

34.     Mr. Hirsch's and Ms. Fitzpatrick's deliberate inaction was a breach of their duty to render assistance to J.C. Brown under 46 U.S.C.A. § 2304. As a proximate consequence, J.C.

Brown died, and his body was never recovered.

35.     Furthermore, because Mr. Hirsch and Ms. Fitzpatrick were, at all relevant times, acting in their capacity not only as the Yacht Club's Officers, but also as the Co-Chairmen of its Race Committee, the Yacht Club is vicariously liable for their actions.

## COUNT THREE – Wanton or Gross Negligence

36.     Plaintiff Jane Brown realleges paragraphs one through thirty-five of the Complaint.

37.     At the aforementioned time and place, Defendant Fairhope Yacht Club wantonly disregarded its duty to warn the race participants, in particular the Skipper of the boat occupied by J.C. Brown, of the severe weather alerts being issued by the various news and weather outlets, and directly by the USCG, as well as to act by cancelling the yacht race.

38.     The Yacht Club's decisions placed its own interests above the safety of race participants despite the knowledge of severe and dangerous conditions, and without regard to its obligations under its USCG permit and as a member of US Sailing Association sponsoring such a race, evidencing the Yacht Club's wantonness.

39.     As a proximate consequence of the wantonness or gross negligence of Defendant Fairhope Yacht Club, J.C. Brown was killed, and his body was never recovered.

## DAMAGES

40.     As a direct and proximate result of the negligent, grossly negligent and wanton conduct of Defendant Fairhope Yacht Club, Plaintiff Jane Brown suffered injury, specifically:

   a. She has been deprived of the support she would have been provided by her deceased husband, J.C. Brown, in an amount to be proved at trial but no less than $500,000.00, plus prejudgment interest;

   b. She has been deprived of the value of services that her husband, J.C. Brown, customarily performed for her;

c. She has been deprived of the love, affection, care, attention, companionship, comfort, and protection of her husband, J.C. Brown;

d. She was required to expend $700.00 for J.C. Brown's memorial expenses, and $800 for a burial plot that ended up being unnecessary because J.C. Brown's was never recovered; and,

e. She has also expended in excess of $3,000 to have J.C. Brown declared legally dead because his body was never recovered.

41.    As a direct and proximate result of the negligent, grossly negligent and wanton conduct of Defendant Fairhope Yacht Club, J.C. Brown suffered severe pain and suffering and mental anguish from the time he became aware of his imminent death to the point at which he died. Plaintiff prays for an award of such pain and suffering damages in an amount to be determined at trial.

42.    As a direct and proximate result of the grossly negligent and wanton conduct of Defendant Fairhope Yacht Club, Plaintiff prays for an award of punitive damages against Fairhope Yacht Club in an amount to be determined at trial.

43.    WHEREFORE, PREMISES CONSIDERED, Plaintiff Jane Brown demands judgment against Defendant Fairhope Yacht Club in such amount of compensatory and punitive damages as the Court may award, as well as her costs, attorney's fees and prejudgment interest.

Respectfully submitted, this the _7th_ day of February, 2018.

JANE BROWN

By:    /s/ James J. Crongeyer, Jr._____
James J. Crongeyer, Jr., AL Bar 9725-067J
H. Ruston Comley (*PHV* Application to be filed)
WATKINS & EAGER PLLC
400 East Capitol Street
Post Office Box 650
Jackson, Mississippi 39205-0650
Phone: 601-965-1900
Fax:    601-965-1901
jcrongeyer@watkinseager.com

rcomley@watkinseager.com

H. Lanier Brown, II (BRO067)
WATKINS & EAGER PLLC
Lakeshore Park Plaza Office Building
2204 Lakeshore Drive, Suite 114
Birmingham, Alabama 35209
Phone: (205) 598-2100
Fax:    (205) 449-1750
lbrown@watkinseager.com

Omar L. Nelson (*PHV* Application to be filed)
GIBBS TRAVIS PLLC
1400 Meadowbrook Road, Suite 100
Jackson, Mississippi 39211
Phone:  601-487-2640
Fax:     601-366-4295
onelson@gibbstravis.com