IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANE BROWN, etc., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 18-0061-CG-MU |
| FAIRHOPE YACHT CLUB, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

On February 15, 2018, Defendant Fairhope Yacht Club filed a Motion to Dismiss all of Plaintiff's claims in this action with prejudice. (Doc. 4). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. Having reviewed and considered the relevant pleadings, the relevant law, and with the benefit of counsels' arguments at a hearing held on March 29, 2018, the undersigned Magistrate Judge **RECOMMENDS** that the Motion to Dismiss with Prejudice filed by Defendant be **DENIED** for the reasons set forth below.

## SUMMARY OF PROCEEDINGS

On February 7, 2018, Plaintiff Jane Brown, on behalf of herself and as Personal Representative and Executrix of the Estate of Jimmie Charles Brown, filed a complaint against Defendant Fairhope Yacht Club. (Doc. 1). In her complaint, Brown asserts claims against Defendant for the wrongful death of her husband. (*Id*. at pp. 5-7). Defendant filed the instant motion to dismiss the

claims on February 15, 2018. (Doc. 4). Plaintiff filed a response and brief in opposition to the motion to dismiss on March 2, 2018, and Defendant filed a reply brief in response to Plaintiff's opposition on March 9, 2018. (Docs. 10 & 13). On March 29, 2018, the parties appeared before the undersigned Magistrate Judge for oral argument on Defendant's motion. (Doc. 21). The motion is now ripe for decision.

## **SUMMARY OF ALLEGATIONS**[1]

Plaintiff's Complaint alleges the following:

On April 25, 2015, Defendant Fairhope Yacht Club sponsored and hosted the 2015 Dauphin Island Race, which was a boat race that began in Baldwin County, Alabama, and concluded in Mobile County, Alabama, at Dauphin Island. (Doc. 1 at pp. 1-2). In the months leading up to the race, the Yacht Club's Race Committee, the group responsible for the planning and safe conduct of the race, chose not to develop any form of safety plan to respond to emergencies that might arise during the race, nor did the Committee create any weather plan to inform its decision-making in the event of severe weather. (*Id*. at p. 2). Before the race, the Yacht Club applied to the United States Coast Guard (Coast Guard or USCG) for a permit to conduct the race. (*Id*.). In its application, the Yacht Club represented to the USCG that no unusual hazards to participants would be introduced into the Regatta Area. (*Id*.). While the Yacht Club listed no specific vessels it was providing for safety purposes on the

---

[1] For consideration of this motion to dismiss, Plaintiff's factual allegations have been accepted as true and viewed in the light most favorable to Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

application, it represented that it deemed its patrol adequate for safety purposes and requested no Coast Guard or Coast Guard Auxiliary Patrol. (*Id*.).

The Coast Guard issued the permit and made it clear that the Yacht Club was responsible for the safe conduct of the event, including, but not limited to, instruction to and qualification of participants, safety equipment inspections, and rescue and first aid facilities. (*Id*.). The Coast Guard also instructed the Yacht Club that it "must be constantly aware of weather forecasts and conditions so that unsafe conditions can be identified and responded to, including termination of the event if necessary to ensure safety of all participants." (*Id*.). The Coast Guard permit specifically stated that: "This permit is issued on the condition that the sponsor furnish a sufficient number of rescue vessels to provide adequate safety for all participants. These vessels must be adequately identified as Event Committee Boats. They are direct representatives of the sponsor who is responsible for briefing and coordinating each vessel 's operation ensuring positive control for the event." (*Id*.).

At 6:11 p.m. on the evening before the race, the National Oceanic and Atmospheric Administration (NOAA) issued a weather forecast that indicated severe thunderstorms were possibly headed towards the Mobile Bay area. (*Id*. at p.3). On the morning of the race, April 25, 2015, at 3:48 a.m., the NOAA's weather forecast indicated severe thunderstorms possible near the Mobile Bay area. (*Id*.). The National Weather Service (NWS) in Mobile also issued severe thunderstorm warnings for Mobile and Baldwin Counties the morning of the yacht race. (*Id*.). The Yacht Club hosted a breakfast event from 7:30 am to 8:30

3

a.m. for race participants. (*Id*.). The race was originally scheduled to begin at 9:30 a.m. (*Id*.). At approximately 7:44 a.m. on the day of the race, the Yacht Club caused a cancellation notice to be posted on its website for about 30 minutes, stating that the race had been cancelled due to inclement weather. (*Id*.). The cancellation notice was removed at the direction of the Yacht Club at about 8:10 a.m. (*Id*.).

Before the start of the race, all participants were informed that the Yacht Club would communicate with race participants on Channel 68 of the VHF radio band. (*Id*.). Due to the Yacht Club's original decision to cancel the race, the start time of the race was delayed. (*Id*.). The Yacht Club also ordered a restart of the already delayed race that further delayed the official start. (*Id*.). The race ultimately began at 11:00 a.m., instead of the originally scheduled 9:30 a.m. start time. (*Id*.). In all, approximately 476 people were on board 117 boats when the yacht race began after the restart. (*Id*.).

At about 1:35 p.m., the Storm Prediction Center posted another severe thunderstorm watch for the area including Mobile Bay. (*Id*. at p. 4). At about 2:21 p.m. the NWS in Mobile issued another severe thunderstorm warning for Mobile County as a line of storms began to approach from the western border of Alabama. (*Id*.). At approximately 2:30 p.m., the USCG called the Race Committee aboard the Race Committee Boat at the finish line via telephone and advised that potentially severe weather was incoming. (*Id*.). Sometime shortly thereafter, the USCG made a VHF radio transmission to the Race Committee Boat stating that it was "on station" nearby. (*Id*.). At about 2:47 p.m., the NWS

4

issued a second severe thunderstorm warning, this one for the Baldwin County area. (*Id*.). At about 3:10 p.m., the storm entered Mobile Bay from the west. (*Id*.). As a result of the delayed start, most of the boats in the race were still in Mobile Bay at 3:10 p.m. (*Id*.). At about 3:15 p.m., Middle Bay Lighthouse recorded a wind gust of 73 MPH, which is one MPH under hurricane strength. (*Id*.). In addition to the land warnings, marine warnings were also issued. (*Id*.).

As the deadly storm entered Mobile Bay, the Yacht Club's Principal Race Officer, Anne Fitzpatrick, and Race Committee Co-Chairman, John Hirsch, occupied a forty-eight (48) foot motor yacht positioned at the finish line near Dauphin Island. (*Id*.). This vessel, owned and/or controlled by Mr. Hirsch and/or Ms. Fitzpatrick as representatives of the Yacht Club, was capable of safely rendering assistance to nearby boats in danger of sinking. (*Id*.). However, despite their awareness of the danger faced by nearby race participants, Ms. Fitzpatrick and Mr. Hirsch chose not to share weather warnings on VHF Channel 68 and chose not to participate in any rescue efforts until the storm had passed. (*Id*. at pp. 4-5). During the storm, the boat carrying Plaintiff's decedent, J.C. Brown, capsized on the Mobile County side of Mobile Bay, and Mr. Brown drowned. (*Id*. at p. 5). A total of ten (10) boats sank during the yacht race, putting forty (40) people into the water, six (6) of whom, like J.C. Brown, lost their lives. (*Id*.). J.C. Brown 's body was never recovered. (*Id*.).

Count One of Plaintiff's Complaint asserts a cause of action for negligence. (*Id*.). Plaintiff alleges that Defendant sponsored a yacht race and had a duty to exercise due care for race participants. (*Id*.). Plaintiff further

alleges that the Yacht Club's decision to reverse its initial decision to cancel the race due to the threat of inclement weather was negligent, and that its negligence in this regard caused the boat occupied by Mr. Brown to be positioned directly in the path of the storm. (*Id*.). Plaintiff also alleges that Defendant negligently induced and incentivized race participants to race in extremely dangerous severe weather, negligently failed to warn the race participants of the approaching severe weather system of which it was aware, and negligently or willfully violated its USCG permit by not providing for sufficient safety and rescue boats, by failing to be constantly aware of weather forecasts and conditions so that unsafe conditions could be identified, by not communicating with participants regarding unsafe conditions, and by not terminating the event to ensure the safety of all participants. (*Id*. at pp. 5-6).

In Count Two, Plaintiff asserts a cause of action against Defendant for failure to provide assistance at sea as required by 46 U.S.C.A. § 2304. (*Id*. at p. 6). She alleges that the co-chairs of Defendant's race committee, who were anchored at the finish line aboard a 48-foot motor yacht, were aware or should have been aware of the general location of Mr. Brown's vessel and the imminent danger faced by the occupants of the vessel and deliberately failed to render assistance to Mr. Brown by choosing to do nothing until two hours after the storm had passed. (*Id*. at pp. 6-7).

In Count Three of her Complaint, Plaintiff asserts a cause of action for wanton or gross negligence by Defendant that caused Mr. Brown's death. Specifically, Plaintiff alleges that Defendant wantonly disregarded its duty to

warn the race participants of the severe weather alerts being issued by the various news and weather outlets, and directly to Defendant by the USCG. (*Id.* at p. 7). Plaintiff also alleges that Defendant acted wantonly by failing to cancel the race and placing its own interests above the safety of the race participants without regard to its obligations under its USCG permit and as a member of US Sailing Association in sponsoring such a race. (*Id.*).

## **STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss on such grounds, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the plaintiff. *See id.; Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997). Even if articulate and well-plead, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)), or "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## **CONCLUSIONS OF LAW**

Defendant's motion to dismiss for failure to state a claim is based on its contention that it owed no duty as the entity that conducted the Dauphin Island Race to the participants in the race under the general maritime law, and therefore, cannot be held liable in this action. (Doc. 4). Plaintiff argues that its complaint does indeed set forth facts which show that Defendant owed her decedent a duty. (Doc. 10). Thus, the sole issue before the Court at this juncture is whether Plaintiff's Complaint, when taking all allegations contained therein as true, demonstrates that Defendant had or assumed a duty to participants in the

race it conducted.[2]

The parties agree that Plaintiff has asserted her claims under the general maritime law. (Doc. 1 at p. 1; Doc. 4 at p. 1). "The general maritime law is a body of concepts, principles and rules, originally customary and international in origin, that have been adopted and expounded over time by the federal courts." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 4-1 (5th ed., West 2011) (citing *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 960 (4th Cir. 1999)). The parties have also indicated that this case presents an issue of first impression as neither party was able to locate a case that delineates the duty, if any, of a yacht club or similarly situated party who controls the timing of, the registration and acceptance of entrants into the race, and the course of a sailboat race and enters into a contract (permit) whereby it accepts the responsibility of "instruction to and qualification of participants, safety equipment inspections," and provision of "a sufficient number of rescue vessels to provide adequate safety for all participants." (Doc. 1 at p.1; *see* Docs. 4, 10, 13, and 21).

Although Defendant has cited cases that are somewhat similar, upon review of those cases, the Court finds that the circumstances in this case significantly differ from those with regard to the existence of a duty. For example, in this case the Fairhope Yacht Club had unique knowledge concerning the

---

[2] The determination of whether a duty exists is a fact-intensive one; accordingly, a final determination as to whether and to what extent a duty existed toward Plaintiff's decedent in this case cannot be made until discovery on this issue has been conducted and a full picture of the facts presented to the Court. At this juncture, although the parties have attached evidence to their filings and made reference to matters outside the four corners of the complaint in their filings and argument, the Court will only be considering the allegations contained in the complaint.

conditions on the race course and had the ability to control, and did control, the timing of the race and, in fact, whether the race occurred at all. The most similar case, *Brooke v. Dennis*, 1974 A.M.C. 664 (N.D. Cal. Dec. 20, 1973), involved the death of a participant in a sailboat race after the boat accidentally and inexplicably broached, throwing the three occupants into the water. Unlike this case, the conditions of the sea played no part in the incident in *Brooke,* the sponsoring organization did not supply patrol craft for the race or agree to do so, no officer, director, or employee of the sponsoring organization was physically on navigable waters before, during or after the race, and there was no evidence that the sponsoring organization had any superior or unique knowledge of potential danger to the participants. Under the unique facts of that case, after finding that it lacked federal court jurisdiction over the sponsoring organization, the Court also found that the sponsoring organization owed no duty to the plaintiff's decedent and had committed no act that caused his death. *Brooke,* 1974 A.M.C. at 671.

Schoenbaum offers some helpful commentary on how Courts are to evaluate claims of first impression:

> The general maritime law, however, is not a complete or all-inclusive system. When new situations arise that are not directly governed by legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods. Federal courts may, and often do, look to state statutory laws and to precepts of the common law which they "borrow" and apply as the federal admiralty rule.

Schoenbaum, *supra*, at § 4-1. "[F]or example, much of general maritime tort law is borrowed state law." *Id*. at § 4-2 (citing *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293 (2d Cir. 2009) (applying New York statutory and common law in an admiralty case, ruling that the general maritime law incorporates common law

negligence principles and state law in particular)). The elements of a maritime negligence cause of action, like a common law negligence claim, are "[t]he existence of a duty required by law which obliges the person to conform to a certain standard of conduct in order to protect others against unreasonable risks," breach of that duty, proximate cause, and damage suffered by the plaintiff. Schoenbaum, *supra,* at § 5-2; *accord Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

Neither party has cited the Court to any statement of maritime tort law that applies to a person or entity in the position of the Fairhope Yacht Club. The "duty" cases cited do not provide clear guidance in this fact-intensive setting. Defendant argues that the absence of case law supports its position that such an entity never has a duty toward a race participant, while Plaintiff argues that application of common law negligence principles supports its position that Defendant here did owe a duty to Mr. Brown. (Doc. 4 at p. 15; Doc. 10 at pp. 1-2). While not in a position at this juncture to make a pronouncement as to exactly what duty Defendant owed under the circumstances of this case, if any, the Court is also not inclined to hold that a race organizer could never owe a duty to race participants. *See, e.g., Johnson v. Galencare, Inc.,* No. 8:14-cv-2069-T-33TGW, 2014 WL 6674622, at *4 (M.D. Fla. Nov. 24, 2014) (declining to address the duty, if any, owed to the plaintiff on a negligent supervision claim at the motion to dismiss stage, but instead waiting to make a determination when it had the benefit of all discovery at the summary judgment stage). The Court does find that Plaintiff has set forth sufficient facts in her complaint, when taken as true, to

support "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## CONCLUSION

As set forth above, the Court finds that the allegations set forth in Plaintiff's complaint meet the liberal pleading standards required by the Federal Rules of Civil Procedure and cases interpreting those rules. Taking the Plaintiff's allegations as true, this court finds that the complaint adequately alleges that Defendant Fairhope Yacht Club owed a duty to Plaintiff's decedent, breached that duty, and contributed to his death. The determination of the extent of the duty owed, if any, would be premature at this stage of the proceedings. Accordingly, it is **RECOMMENDED** that Defendant's Motion to Dismiss with Prejudice (Doc. 4) be **DENIED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the

absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **24th** day of **April, 2018**.

<u>s/P. BRADLEY MURRAY</u>
UNITED STATES MAGISTRATE JUD