IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANE BROWN, etc., *et al.,*     )
                                 )
    Plaintiffs,        )
                                 )
v.                             )    CIVIL ACTION NO. 18-0061-TFM-MU
                               )
FAIRHOPE YACHT CLUB,    )
                               )
    Defendant.      )

## REPORT AND RECOMMENDATION

Defendant Fairhope Yacht Club has filed motions to dismiss each of the plaintiffs' complaints in this action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that this Court lacks subject matter jurisdiction. (Docs. 48, 60, 64, 65). Also pending before the Court is Plaintiffs' motion for leave the amend their complaints. (Doc. 67). These motions have been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. Having reviewed and considered the relevant pleadings and briefs and the relevant law, the undersigned Magistrate Judge **RECOMMENDS** that Defendant Fairhope Yacht Club's motions to dismiss the complaints filed by Plaintiffs Amanda Beall, Angelina Tew, Jane Brown, Robert Luiten, and Lennard Luiten for lack of subject matter jurisdiction be **DENIED** for the reasons set forth below. The undersigned further **RECOMMENDS** that Plaintiffs' Motion for Leave to Amend Complaint be **GRANTED**.

## SUMMARY OF PROCEEDINGS

Plaintiffs Amanda Beall, Angelina Tew, Jane Brown, Robert Luiten, and Lennard Luiten have all filed complaints against Defendant Fairhope Yacht Club (FYC) arising from deaths and injuries suffered during the 2015 Dauphin Island Race, a sailboat race hosted by Defendant. (Docs. 1, 30, 31, and 47).[1] Defendant filed the instant motions to dismiss these complaints for lack of subject matter jurisdiction. (Docs. 48, 60, 64, and 65). Plaintiffs filed responsive briefs in opposition to the motions to dismiss (Docs. 56 and 69), and Defendant filed reply briefs in response to Plaintiffs' opposition (Docs. 58, 73, 74, and 75). The motions are now ripe for decision. On July 31, 2018, after their individual actions were consolidated into the present action, Plaintiffs filed a motion for leave to amend their complaints into a joint Amended Complaint for the sake of consistency and to avoid duplicative motion practice. (Doc. 67). Defendant filed a response in opposition to the motion for leave to amend the complaints on the ground that the motion was premature because of its allegation that the Court lacks subject matter jurisdiction. (Doc. 70). The motion for leave to amend is also now ripe.

## SUMMARY OF ALLEGATIONS[2]

Although Plaintiffs each filed a separate complaint, for purposes of determining subject matter jurisdiction, the relevant allegations are the same

---

[1] The plaintiffs' complaints were originally filed as separate actions, but were later consolidated into this action. (Docs. 29 and 46).

[2] For consideration of these motions to dismiss, Plaintiffs' factual allegations have been accepted as true and viewed in the light most favorable to Plaintiffs. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Also, for purposes of this motion, the Court will be citing to the complaint filed by Plaintiff Jane Brown (Doc. 1).

and are as follows:

On April 25, 2015, Defendant Fairhope Yacht Club sponsored and hosted the 2015 Dauphin Island Race, which was a sailboat race that began in Baldwin County, Alabama, and concluded in Mobile County, Alabama, at Dauphin Island.[3] (Doc. 1 at pp. 1-2). In the months leading up to the race, the Yacht Club's Race Committee, the group responsible for the planning and safe conduct of the race, chose not to develop any form of safety plan to respond to emergencies that might arise during the race, nor did the Committee create any weather plan to inform its decision-making in the event of severe weather. (*Id.* at p. 2). Before the race, the Yacht Club applied to the United States Coast Guard (Coast Guard or USCG) for a permit to conduct the race. (*Id.*). In its application, the Yacht Club represented to the USCG that no unusual hazards to participants would be introduced into the Regatta Area. (*Id.*). While the Yacht Club listed no specific vessels it was providing for safety purposes on the application, it represented that it deemed its patrol adequate for safety purposes and requested no Coast Guard or Coast Guard Auxiliary Patrol. (*Id.*).

The Coast Guard issued the permit and made it clear that the Yacht Club was responsible for the safe conduct of the event, including, but not limited to, instruction to and qualification of participants, safety equipment inspections, and rescue and first aid facilities. (*Id.*). The Coast Guard also instructed the Yacht

---

[3] Baldwin County is on the east side of Mobile Bay and Dauphin Island, which is in Mobile County, is on the west side of Mobile Bay. Therefore, the race necessitated crossing the entire width of Mobile Bay, including the ship channel leading into the Port of Mobile.

Club that it "must be constantly aware of weather forecasts and conditions so that unsafe conditions can be identified and responded to, including termination of the event if necessary to ensure safety of all participants." (*Id*.). The Coast Guard permit specifically stated that: "This permit is issued on the condition that the sponsor furnish a sufficient number of rescue vessels to provide adequate safety for all participants. These vessels must be adequately identified as Event Committee Boats. They are direct representatives of the sponsor who is responsible for briefing and coordinating each vessel 's operation ensuring positive control for the event." (*Id*.).

At 6:11 p.m. on the evening before the race, the National Oceanic and Atmospheric Administration (NOAA) issued a weather forecast that indicated severe thunderstorms were possibly headed towards the Mobile Bay area. (*Id*. at p.3). On the morning of the race, April 25, 2015, at 3:48 a.m., the NOAA's weather forecast indicated severe thunderstorms possible near the Mobile Bay area. (*Id*.). The National Weather Service (NWS) in Mobile also issued severe thunderstorm warnings for Mobile and Baldwin Counties the morning of the yacht race. (*Id*.). The Yacht Club hosted a breakfast event from 7:30 am to 8:30 a.m. for race participants. (*Id*.). The race was originally scheduled to begin at 9:30 a.m. (*Id*.). At approximately 7:44 a.m. on the day of the race, the Yacht Club caused a cancellation notice to be posted on its website for about 30 minutes, stating that the race had been cancelled due to inclement weather. (*Id*.). The cancellation notice was removed at the direction of the Yacht Club at about 8:10 a.m. (*Id*.).

Before the start of the race, all participants were informed that the Yacht Club would communicate with race participants on Channel 68 of the VHF radio band. (*Id*.). Due to the Yacht Club's original decision to cancel the race, the start time of the race was delayed. (*Id*.). The Yacht Club also ordered a restart of the already delayed race that further delayed the official start. (*Id*.). The race ultimately began at 11:00 a.m., instead of the originally scheduled 9:30 a.m. start time. (*Id*.). In all, approximately 476 people were on board 117 boats when the yacht race began after the restart. (*Id*.).

At about 1:35 p.m., the Storm Prediction Center posted another severe thunderstorm watch for the area including Mobile Bay. (*Id*. at p. 4). At about 2:21 p.m. the NWS in Mobile issued another severe thunderstorm warning for Mobile County as a line of storms began to approach from the western border of Alabama. (*Id*.). At approximately 2:30 p.m., the USCG called the Race Committee aboard the Race Committee Boat at the finish line via telephone and advised that potentially severe weather was incoming. (*Id*.). Sometime shortly thereafter, the USCG made a VHF radio transmission to the Race Committee Boat stating that it was "on station" nearby. (*Id*.). At about 2:47 p.m., the NWS issued a second severe thunderstorm warning, this one for the Baldwin County area. (*Id*.). At about 3:10 p.m., the storm entered Mobile Bay from the west. (*Id*.). As a result of the delayed start, most of the boats in the race were still in Mobile Bay at 3:10 p.m. (*Id*.). At about 3:15 p.m., Middle Bay Lighthouse recorded a wind gust of 73 MPH, which is one MPH under hurricane strength. (*Id*.). In addition to the land warnings, marine warnings were also issued. (*Id*.).

As the deadly storm entered Mobile Bay, the Yacht Club's Principal Race Officer, Anne Fitzpatrick, and Race Committee Co-Chairman, John Hirsch, occupied a forty-eight (48) foot motor yacht positioned at the finish line near Dauphin Island. (*Id*.). This vessel, owned and/or controlled by Mr. Hirsch and/or Ms. Fitzpatrick as representatives of the Yacht Club, was capable of safely rendering assistance to nearby boats in danger of sinking. (*Id*.). However, despite their awareness of the danger faced by nearby race participants, Ms. Fitzpatrick and Mr. Hirsch chose not to share weather warnings on VHF Channel 68 and chose not to participate in any rescue efforts until the storm had passed. (*Id*. at pp. 4-5). During the storm, boats carrying the plaintiffs or their decedents capsized on the Mobile County side of Mobile Bay. (*Id*. at p. 5). A total of ten (10) boats sank during the yacht race, putting forty (40) people into the water, six (6) of whom lost their lives and several who suffered injuries. (*Id*.).

One of the counts in Plaintiffs' Complaints asserts a cause of action for negligence. (*Id*.). Plaintiffs allege that Defendant sponsored a yacht race and had a duty to exercise due care for race participants. (*Id*.). Plaintiff further alleges that the Yacht Club's decision to reverse its initial decision to cancel the race due to the threat of inclement weather was negligent, and that its negligence in this regard caused many boats to be positioned directly in the path of the storm. (*Id*.). Plaintiff also alleges that Defendant negligently induced and incentivized race participants to race in extremely dangerous severe weather, negligently failed to warn the race participants of the approaching

severe weather system of which it was aware, and negligently or willfully violated its USCG permit by not providing for sufficient safety and rescue boats, by failing to be constantly aware of weather forecasts and conditions so that unsafe conditions could be identified, by not communicating with participants regarding unsafe conditions, and by not terminating the event to ensure the safety of all participants. (*Id.* at pp. 5-6).

Plaintiffs also assert a cause of action against Defendant for failure to provide assistance at sea as required by 46 U.S.C.A. § 2304. (*Id.* at p. 6). They allege that the co-chairs of Defendant's race committee, who were anchored at the finish line aboard a 48-foot motor yacht, were aware or should have been aware of the general location of the at-risk vessels and the imminent danger faced by the occupants of the at-risk vessels and deliberately failed to render assistance to the surviving Plaintiffs and to Plaintiffs' decedents by choosing to do nothing until two hours after the storm had passed. (*Id.* at pp. 6-7).

In addition, Plaintiffs assert a cause of action for wanton or gross negligence by Defendant that caused the deaths and injuries of participants in the race. Specifically, Plaintiffs allege that Defendant wantonly disregarded its duty to warn the race participants of the severe weather alerts being issued by the various news and weather outlets, and directly to Defendant by the USCG. (*Id.* at p. 7). Plaintiffs also allege that Defendant acted wantonly by failing to cancel the race and placing its own interests above the safety of the race participants without regard to its obligations under its USCG permit and as a member of US Sailing Association in sponsoring such a race. (*Id.*).

## STANDARD OF REVIEW

Defendant argues that Plaintiffs' complaints are due to be dismissed, pursuant to Rule 12(b)(1), because this Court lacks subject matter jurisdiction. Subject matter jurisdiction is a threshold inquiry that must be established before the Court can proceed to evaluate Plaintiffs' claims on the merits. *See, e.g., Douglas v. United States*, 814 F.3d 1268, 1280-81 (11th Cir. 2016) (noting that "[f]ederal courts are courts of limited jurisdiction" and that, if a federal "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). "[T]he party invoking the court's jurisdiction must prove, by a preponderance of the evidence, facts supporting the existence of jurisdiction." *Jory v. United States*, 562 F. App'x 926, 927 (11th Cir. 2014) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint," and when considering a facial challenge, "the court must … take the complaint's allegations as true." *Id.* "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Id.*

## CONCLUSIONS OF LAW

Defendant's motions to dismiss for lack of subject matter jurisdiction are

based on its argument that Plaintiffs' claims do not fall under the maritime law subject matter jurisdiction of this Court. While the parties agree that Plaintiffs have asserted their claims under the general maritime law, *see, e.g.,* Doc. 1 at p. 1; Doc. 4 at p. 1, Defendant asserts that the choice of law issue is distinct from the question of whether admiralty jurisdiction can be invoked under the circumstances of this case.

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In addition, 28 U.S.C. § 1333 provides that "[t]he district courts shall have original jurisdiction …of: (1) Any civil case of admiralty or maritime jurisdiction…." "[A] party seeing to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). To satisfy this test, the party invoking jurisdiction must show by a preponderance of the evidence that (1) the tort occurred on navigable water, (2) the incident had a "potentially disruptive impact on maritime commerce," and (3) that there is a "substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Id.; Sisson v. Ruby*, 497 U.S. 358, 362 & 364 (1990).

Although Defendant argues that the tort alleged here did not occur on navigable water and, therefore, the location test is not met, Defendant's argument fails because both the alleged facts and the law show that Plaintiffs have met the locality test. First, Plaintiffs have alleged that at least some of the

alleged negligent acts occurred on Mobile Bay, which is undeniably a navigable waterway.[4] For example, Plaintiffs allege that persons acting on behalf of Defendant, the principal race officer and the regatta co-chairman, were on a boat on Mobile Bay during the race and acted negligently by failing to warn race participants of the impending storm even though they received a phone call from the Coast Guard warning them and by not aiding those who capsized. Moreover, "[f]or purposes of the location test, the tort occurs 'where the alleged negligence took effect, rather than where the negligent act was done.'" *Masforce Eur., BVBA v. Mastry Marine & Indus. Design, Inc.*, Case No. 8:11-CV-1814-T-24AEP, 2013 WL 12156533, *5 (M.D. Fla. Oct. 24, 2013) (quoting *Harville v. Johns-Manville Prod. Corp.*, 731 F.2d 775, 782 (11th Cir 1984)). Applying the *Harville* holding, the Eleventh Circuit found, in *Mink v. Genmar Indus., Inc.,* 29 F.3d 1543, 1546 (11th Cir. 1994), that the locality test was satisfied in a case in which the defendant was alleged to have been negligent in the manufacture of a boat, an act which took place on land, and the injury occurred as a result of an incident on navigable waters, noting that "the defect could not have manifested itself, and the injury could not have occurred until the vessel was actually operated as a vessel in navigation." Likewise, in this case, several of the alleged negligent acts of Defendant could not have manifested themselves and caused injury until the sailboats were on Mobile Bay. The Court has found no support for the proposition that this locality test applies only to product liability claims, as indicated by Defendant, but rather finds that the rationale is equally as applicable to the

---

[4] Defendant does not dispute that Mobile Bay is a navigable waterway.

instant fact situation. *See Hails v. Atlantic Richfield Co.*, 595 F. Supp. 948, 950 (W.D. La. 1984) (holding, in a non-product liability case, that "a tort occurs where the *impact* of the act or omission produces injury" and finding admiralty jurisdiction was proper); *Hogge v. SS Yorkmar*, 434 F. Supp. 715, 739-40 (D. Md. 1977) (finding that "courts have consistently rejected the argument that land-based negligence which causes injury on the seas is outside admiralty jurisdiction" in addressing whether the Corp of Engineers's negligence that occurred on land defeated admiralty jurisdiction). Accordingly, the Court finds that the location test has been satisfied by Plaintiffs.

Next, Plaintiffs must prove by a preponderance of the evidence that the incident had a "potentially disruptive impact on maritime commerce." The inquiry is not whether the particular incident actually had a disruptive impact on maritime commerce, but "whether the incident involved was of a sort with the potential to disrupt maritime commerce." *Grubart*, 513 U.S. at 538; *see, e.g., Caron v. NCL (Bahamas), Ltd.,* No. 17-15008, 2018 WL 6539178, at *3 (11th Cir. Dec. 13, 2018) (holding that personal injury claims by cruise ship passengers for injuries suffered at sea satisfy this prong and are within the admiralty jurisdiction of the district courts); *Anderson v. U.S.*, 317 F.3d 1235, 1238 (11th Cir. 2003) (finding that this prong was satisfied in case in which the plaintiff was injured by a bomb that was released into the AFWTF range off the coast of Puerto Rico because the bombing activities have the potential to disrupt maritime commerce); *Mink,* 29 F.3d at 1546 (holding that this question "does not turn on the *actual* effects on maritime commerce"). In other words, the question is "whether the incident could

be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id*. at 539. In this case, it would be fanciful to suggest that an accident involving a sailboat or sailboats involved in a race with over 100 sailboats participating that crosses a major commercial shipping channel would not have the potential to disrupt maritime commerce. Indeed, both the Coast Guard and Defendant acknowledged this fact during the permitting process prior to the race. *See* Doc. 4 at pp. 17-18. Accordingly, Plaintiffs have met this prong.

Finally, in order to demonstrate that this case is properly before this Court pursuant to admiralty jurisdiction, Plaintiffs must show by a preponderance of the evidence that there is a "substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Grubart,* 513 U.S. at 534. In *Mink*, the Eleventh Circuit held that the navigation of a vessel on navigable waters meets this prong, stating that "[o]bviously, this is the very paradigm of traditional maritime activity." 29 F.3d at 1546 (quoting *Sisson v. Ruby*, 497 U.S. 358, 368 (1990)). Courts have long held that sailboat races and pleasure boating constitute traditional maritime activity. *See, e.g., De Sole v. U.S.,* 947 F.2d 1169 (4th Cir. 1991) (applying maritime law to a collision during a regatta); *Menin v. Wilner*, 424 F.2d 1058, 1059 (5th Cir. 1970) (applying maritime law to personal injury claims arising from injuries sustained aboard a pleasure boat when it went under a low bridge); *Evans v. Nantucket Cmty. Sailing, Inc.*, 582 F. Supp. 2d 121, 136 (D. Mass. 2008) (applying maritime law and finding a significant relationship to traditional maritime activity in a case involving an injury occurring on board a sailboat during a sailboat race); *Naglieri v. Bay*, 93 F. Supp. 2d 170 (D. Conn.

1999) (holding maritime law applied to claims made against a vessel and owner for the death of a passenger washed overboard during a regatta); *Whalen v. BMW of N. Am., Inc.*, 864 F. Supp. 131 (S.D. Cal. 1994) (applying maritime law to personal injury claims due to a collision that occurred during a regatta). This Court, thus, also finds that Plaintiffs have shown a substantial relationship between the Dauphin Island sailboat race involved here and traditional maritime activity.

As noted above, Plaintiffs filed a motion for leave to amend their individual complaints to file a joint amended complaint for the sake of consistency and to avoid duplicative motion practice. (Doc. 67). The sole ground advanced by Defendant in opposition to the motion for leave to amend was that the motion was premature in light of its motions to dismiss for lack of subject matter jurisdiction. Having concluded that the Court does have subject matter jurisdiction over Plaintiffs' causes of action and finding that the requested amendment will facilitate the instant litigation, the undersigned Magistrate Judge, therefore, **RECOMMENDS** that Plaintiffs' Motion for Leave to Amend Complaint be granted.

## CONCLUSION

As set forth above, the Court finds that Plaintiffs have met both the location test and the connection test to establish admiralty jurisdiction and have, therefore, established that this Court does have subject matter jurisdiction over this action. Accordingly, it is **RECOMMENDED** that Defendant's motions to dismiss for lack of subject matter jurisdiction (Docs. 48, 60, 64, and 65) be

**DENIED.** As set forth above, it is also **RECOMMENDED** that Plaintiffs' Motion for Leave to Amend Complaint be **GRANTED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or

refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the **17th** day of **January, 2019**.

                        s/P. BRADLEY MURRAY
                        UNITED STATES MAGISTRATE JUDGE